UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                           )
BETTY B. MURCHISON,        )
                           )
        Plaintiff,         )
                           )
        v.                 )        Civil Action No. 98-436 (RWR)
                           )
INTER-CITY MORTGAGE        )
CORPORATION PROFIT SHARING )
& PENSION PLANS, et al.,   )
                           )
        Defendants.        )
_____)
```

MEMORANDUM OPINION

The court of appeals has issued a judgment ("Judgment") affirming in part, vacating in part, and reversing in part the order accompanying the August 10, 2001 memorandum opinion ("August opinion") in this case.  The court vacated that part of the order denying relief to plaintiff Betty B. Murchison ("Betty") on Count V of her complaint concerning assets of a joint venture, and reversed that part of the order that did not require defendant George Murchison ("George") to pay back to the Inter-City Mortgage Corporation Profit Sharing Plan (the "Plan") what the Plan lost due to Plan transactions George conducted that were prohibited under ERISA.

In addition, Betty has moved to hold George in contempt of an order that he file a declaration that he has provided to Betty an accounting of Murchison Brothers Partnership assets and any

-2-

distribution due her from them, and a statement of receipts and
disbursements reflecting the final accounting.  She has also
moved for an additional award of attorney's fees and for payment
of the funds collected by the receiver.

I.   Joint venture

Count V of Betty's complaint asks that George be required to
account to her for the proceeds of the sale of the Central Avenue
Property.  That property was not controlled by the Murchison
Brothers partnership identified in Count IV and referred to
throughout the August 10, 2001 memorandum opinion ("August
opinion") as the "Partnership."  It was controlled by what
plaintiff called the Murchison, Murchison and Ricks partnership,
which was not named in her complaint but will be referred to here
as "MMR."  (Tr. Trans. Vol. I, at 30-31.)  The August opinion,
see August opinion at 11-12, attributed Betty's testimony
regarding receipt of only two distributions in 1995 to the
Murchison Brothers partnership when she actually was testifying
about the MMR partnership.  Because the record showed that Betty
was entitled to an accounting of Murchison Brothers partnership
assets, she was granted relief on that request in Count IV.

The court of appeals noted that the August opinion offered
no cause for refusing an accounting on the Count V property
controlled by the MMR partnership, referred to in the remand
judgment as the "joint venture," Judgment at 2, to which D.C. law

entitled her.  I read the judgment as requiring an accounting for
the joint venture and I will order one.  The court of appeals
also noted that the August opinion did not explain whether I
credited Betty's claim that she did not receive more than $15,000
of the joint venture's proceeds.  I will expand on my finding
cited in the remand that Betty "has failed to provide sufficient
evidence to prove that the portion of assets that George paid her
was less than the amount to which she was entitled."

I am not persuaded that Betty received less than what she
was entitled to from the Central Avenue property beyond the
$15,000 payout.  She testified that she remembered "asking for
maybe two distributions and that's all.  Possibly -- no, I think
two."  (Tr. Trans. Vol. II, at 131.)  Had such a claim been about
the Murchison Brothers partnership, which handled more
properties, it would have been less troublesome in supporting a
claim for accounting of that partnership's assets.  However,
George's testimony more persuasively undermined Betty's on this
issue concerning the Central Avenue property.  First, his
testimony on this was emphatic, credible, and plausible.  When
Betty's lawyer asked George if he *sent* checks to Betty for her
share of rents and mortgage payments on the Central Avenue
property, he pointedly replied: "No.  Betty Murchison *came* in and
made different withdrawal requests, which she usually would ask
Mr. Ricks and he'd come in and Mr. Ricks and I would sign the

-4-

checks and *give* the disbursed checks to her." (Tr. Trans.
Vol. II, at 20)(emphasis added.) He added without contradiction
that he had provided all those records during the document
inspection conducted by Betty's lawyer. (Id. at 20-21.) The
1997 and 1998 K-1 tax forms were evidence of these additional
payments.

Evidence of certain behavior by George added to George's
credibility. He had actively objected over time to the
unprincipled distributions of Plan assets by Betty's husband.
Unlike John's behavior, George actively took steps after John's
death to make good to the Plan the hundreds of thousands of
dollars in losses caused by John's conduct. While George's
methods used were prohibited, his intentions in those efforts
contrasted starkly with what appeared to be plaintiff's attempt
to ascribe the Plan's pecuniary condition largely to George.

II. Plan repayment

George was a Plan fiduciary and conducted transactions that
were prohibited by ERISA. The court of appeals held it error to
decline to order George to repay to the Plan any losses that
could be chalked up to his prohibited transactions. George will
be ordered to make such repayments.

Not all of George's prohibited transactions, though,
resulted in losses to the Plan. Some - - his transfers of
promissory notes and real estate interests to the Plan to make up

-5-

for John's loan activity that depleted Plan assets - - involved
gains to the Plan.  The prohibited transactions that resulted in
losses to the Plan totaled $137,114.74.  August opinion at 16-
17.[1]

Because John's prohibited actions as a Plan fiduciary also
resulted in losses to the Plan, it would be inequitable to
require only George and not John's estate to make good to the
Plan the losses caused by prohibited transactions.  I do not read
the court of appeals' judgment as prohibiting a "make good" order
against John's estate.  As John's prohibited actions caused a
loss to the Plan of $786,365.16, August opinion at 16, Betty as
personal representative of John's estate, will be ordered make
good to the Plan the losses John caused.

III. Motion for contempt

The August opinion ordered George to provide for an
accounting of the Partnership assets to Betty and to distribute
to her any interest in the Partnership that remains due to her.
A later order required George to file a declaration by
December 27, 2002 that he has complied and a statement of
receipts and disbursements reflecting the final accounting of the

_____

[1]     The erroneous application of an equitable standard
produced only the decision not to require any repayments of any
losses to the Plan resulting from prohibited transactions.  It
did not affect the calculations of losses that George caused.
See Judgment at 3.

Partnership.  Betty has moved to hold George in contempt of that later order.

Much of Betty's motion complains of a failure to account for joint venture assets for which the August opinion did not even require George to account.  It seeks uselessly to relitigate the merits of her claim regarding the joint venture assets. Regarding the Partnership assets, while Betty might contest the accuracy or thoroughness of George's report, George's conduct is hardly contemptuous.  The required declaration was timely filed. It does contain tax records of the partnership showing receipts and disbursements and account balances.  Because the parties would be aided by seeing a final statement of receipts and disbursement of the Partnership in a customary format prepared using generally accepted accounting practices, George will be required to submit one along with the accounting submitted for the joint venture assets.  The motion to hold George in contempt, though, will be denied.

IV.  Attorney's fees

Betty seeks against George an additional award of attorney's fees and costs incurred after the August opinion was issued. Whether to award fees and costs under the ERISA statute is committed to the sound discretion of the court.  29 U.S.C. § 1132(g)(1).  The court's discretion is guided by several considerations:  "'(1) the losing party's culpability or bad

faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved, and (5) the relative merits of the parties' positions.'" Moore v. CapitalCare, Inc., 461 F.3d 1, 13-14 (D.C. Cir. 2006) (quoting Eddy v. Colonial Life Ins. Co. of Am., 59 F.3d 210, 206 (D.C. Cir. 1995)).

The principal activities that appear from the docket to have generated fees and costs to Betty after the August opinion was issued involved establishing the amount of attorney's fees and costs to award under the August opinion; trying to collect on the award or establish claims against the receiver's funds; trying to hold George in contempt; moving for a receiver for the business defendants; and appealing the order accompanying the August opinion and following-up on the court of appeals' Judgment. Not all of those efforts produced any clear losing party, and assessing a general or specific deterrent effect would be problematic. In any event, no bad faith has been established in any of those efforts as to George. Betty sought over opposition a six-figure fee and cost award. She got half. Collection and claimant efforts are ordinary attributes of post-litigation phases and at least here have produced no necessary winner-loser paradigm. Betty lost the motion to appoint a receiver and has now lost the contempt motion. On appeal, she lost one argument,

-8-

had two deferred as premature, won regarding the joint venture
argument, and will benefit from Lee's victory in requiring George
to make good the losses he caused to the Plan.  George's ability
to satisfy another fee award is undetermined on this record,
assuming for the sake of analysis that he is considered the
losing party.

The last two <u>Moore</u> factors loom the largest here.  The
parties in this case have seemed far more intent upon engaging in
unproductive sniping and burden-shifting than achieving optimal
asset recovery for all those admittedly entitled to share in it.
This history counsels great caution lest any further award reward
undeserving behavior.

Early on, plaintiff's counsel asked the court to identify on
its own and appoint a receiver to liquidate certain Plan
properties in which Betty had an interest, initially citing to no
authority for the court to do so and having engaged in no due
diligence to research and identify a suitable receiver himself.
To aid the parties and advance settlement possibilities, the
court did its own due diligence and presented a candidate that
the parties accepted (the "limited receiver").

The parties' diligence deficit did not end there.  The
memorandum opinion filed on August 24, 2004 reflects that fact:

Plaintiff asked in September 1999 for the appointment of a
receiver to oversee the liquidation of [the three business
entity defendants].  This Court repeatedly ordered the
parties to both identify appropriate receiver candidates and

-9-

to develop agreed-upon compensation plans for receivers.
The parties repeatedly failed to comply.  Rather, the
parties, among other things, filed submissions identifying
as candidates for receiver counsel for the plaintiff,
counsel for third-party defendant Lee, and an attorney with
no evident receivership experiences.  That attorney withdrew
from consideration, and the parties identified no suitable,
substitute candidates.

This Court gave counsel every opportunity to show why
plaintiff's request for the appointment of a receiver should
not be deemed abandoned.  In response, counsel have
repeatedly offered themselves as candidates for receiver,
shifted to the Court their burden of locating appropriate
candidates, and insisted that none of the parties is willing
to compensate a receiver.

Mem. Op. August 24, 2004 at 1-2.

Meanwhile, the limited receiver showed far greater diligence

than the parties did in trying to help them identify recoveries

from which some settlement could be fashioned.  While the parties

had contended that the entities they sought to liquidate had no

assets, see Mem. Op. August 24, 2004 at 4, the receiver found and

collected a $98,364.84 note on a property that redounded to the

benefit of the Plan.[2]  The limited receiver diligently fashioned

and proposed a settlement package the parties chose to reject.

Instead, they have now won at best a Pyrrhic victory.  George has

now been ordered to make good the losses he caused the Plan, but

John's estate must now make good the far larger losses he caused.

---

[2]  Although the note was held in the name of Inter-City
Mortgage Corporation, that entity owed more than the amount of
the note to the Plan at the time the two entities ceased to
exist.  Therefore, the Plan has a prior claim on this amount.

-10-

No one would dispute that recoveries of that magnitude here are likely illusory.

On balance, then, no additional award of costs and fees is warranted.

V.   Distribution of limited receiver's collections

The plaintiff's request to distribute the funds collected by the limited receiver will be granted.  Plan funds that were collected derived from the liquidated note referred to above in the amount of $98,346.84, and the sale of a parcel on Irving Street, N.W. in the amount of $35,202.00.  Proceeds from the sale of the three joined parcels at 3005, 3007 and 3009 Georgia Avenue, N.W., Washington, D.C., were consumed entirely by settlement costs plus two tax liens (totaling $339,890.06) and delinquent taxes (totaling $35,497.10) on the Plan's parcels at 3007 and 3009.  However, because the parcel at 3005 Georgia Avenue was owned 50% by plaintiff and 50% by George and Jewel Murchison, those owners shall be entitled to be paid from remaining funds 1/3 of the sale price of the three parcels less their pro-rata share of settlement costs.  The retained funds earned interest of $10,767.41, which will be allocated on a proportionate basis.  The approved fees for the limited receiver are $19,271.00 and the receiver's approved unreimbursed costs

-11-

total $138.84.[3]  The receiver's fees and costs will also be
allocated on a proportionate basis.  Accordingly, the funds
currently held by the receiver shall be distributed as set forth
below.

| | |
|---|---:|
| **Distribution to limited receiver** | **$19,409.84** |
| Unreimbursed expenses | 138.84 |
| Fees | 19,271.00 |
| | |
| **Distribution to Betty from 3005 sale** | **$54,753.83** |
| Proceeds from ½ share of 3005 Georgia Avenue | 62,564.53 |
| Interest earned, pro-rated | 5,044.53 |
| (Less receiver's fees & costs due, pro-rated) | (9,093.51) |
| (Less receiver's costs already paid, pro-rated) | (3,761.72) |
| | |
| **Distribution to George & Jewel from 3005 sale** | **$54,753.83** |
| Proceeds from ½ share of 3005 Georgia Avenue | 62,564.53 |
| Interest earned, pro-rated | 5,044.53 |
| (Less receiver's fees & costs due, pro-rated) | (9,093.51) |
| (Less receiver's costs already paid, pro-rated) | (3,761.72) |
| | |
| **Distribution to Plan Beneficiaries** | **$7,369.48** |
| Proceeds of liquidated note | 98,346.84 |
| Proceeds of sale of Irving Street | 35,202.00 |
| Sale value of 3007-09 Georgia Ave[5] | 250,258.12 |
| Interest earned, pro-rated | 678.35 |
| (Less tax liens paid on 3007-09 Georgia Ave.) | (339,890.06) |
| (Less back taxes on 3007-09 Georgia Ave.) | (35,497.10) |
| (Less receiver's fees & costs due, pro-rated) | (1,222.82) |
| (Less receiver's costs already paid, pro-rated) | (505.85) |

Payments will be made to the seven Plan beneficiaries who
filed claims and who are not currently liable to the Plan,

---

[3]  Expenses of the receivership already paid total
$8,029.27.  This amount includes $3,689.06 paid to the receiver
to reimburse his out of pocket expenses.  Other expenditures
include things such as insurance and utility payments on the
properties and publication notices.

[5]  These properties owned by the Plan shall be valued at ⅔
of the sale price of the three joined Georgia Avenue properties,
less ⅔ of the settlement costs.

-12-

proportionately according to their shares in the Plan.  Since
George is currently liable to the Plan, he will be excluded from
the distribution of the current funds available.  Treating those
claimants' combined 75% shares as 100% results in the following
proportions which will be used to divide the $7,369.48 currently
available Plan funds among those seven identified Plan claimants:
Betty B. Murchison, 37.33%; Yolanda M. Cotton, 17.33%; Michael
Cotton, 13.33%; Leonardo Aden, 12%; Maggie Gray, 9.33%; Betty
Murchison, Jr., 8%; and Morris Lee, 2.67%.

Finally, the Court expresses its sincere thanks to the
limited receiver for accepting the appointment and for his
commendable service throughout the pendency of this litigation.
His generous choice to waive a portion of his fees as a gesture
to the Court and the parties is also noted with appreciation.

A final order accompanies this memorandum opinion.

SIGNED this 12th day of June, 2007.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge