**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
BETTY B. MURCHISON,            )
                               )
        Plaintiff,             )
                               )
    v.                         )    Civil Action No. 98-0436 (RWR)
                               )
INTER-CITY MORTGAGE            )
CORPORATION PROFIT SHARING     )
& PENSION PLANS et al.,        )
                               )
        Defendants.            )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff Betty B. Murchison ("Betty")[1] has moved for me to disqualify myself because of apparent and actual bias against her, and to alter or amend the final judgment in numerous respects. Because Betty's motion reflects no factual basis for the relief sought, the motion will be denied.

BACKGROUND

Betty brought the underlying ERISA action as personal representative of the estate of her late husband John P. Murchison ("John") and in her own right. After a trial on the merits, John and defendant George B. Murchison ("George"), fiduciaries of the Inter-City Mortgage Corporation Profit Sharing and Pension Plans ("Plan"), were found to have breached their fiduciary obligations, causing loss to the Plan in the amounts of

---

[1] First names are used to distinguish among the multiple Murchisons involved.

-2-

$786,365.16 and $137,114.74, respectively.  See Murchison v. Inter-City Mortgage Corp. Profit Sharing & Pension Plans et al. ("Murchison v. Inter-City"), Civ. A. No. 98-436 (RWR), slip op. at 6-7, 16-17 (D.D.C. Aug. 10, 2001) (Findings of Fact ¶¶ 11-15; Conclusions of Law ¶¶ 7-8).  Neither fiduciary was ordered to make good to the Plan, however.  See id. at 14-19 (Conclusions of Law ¶¶ 2-13).  George and defendant Inter-City Mortgage Corporation ("Inter-City") were held liable for an award of attorney's fees and costs in favor of Betty and Morris Lee, a third-party defendant and fourth-party plaintiff.  See Murchison v. Inter-City, order (Aug. 10, 2001).

   Betty and Lee appealed from the judgment on the merits, arguing that 29 U.S.C. § 1109(a) required George to be held liable to the Plan for losses incurred as a result of his fiduciary breaches.  The court of appeals remanded the matter, stating that ERISA "plainly requires fiduciaries who breach their obligations to 'make good to [an ERISA] plan any losses to the plan resulting from each such breach.'"  Murchison v. Murchison, No. 04-7137, slip op. at 2 (D.C. Cir. Mar. 2, 2006) (quoting 29 U.S.C. § 1109(a)).

   After remand, a memorandum opinion and an order issued, determining various pending motions, announcing judgments to compensate the Plan for the losses caused by its fiduciaries, John and George, and announcing the final distribution of funds

-3-

among the Plan claimants.  See Murchison v. Inter-City, 2007 WL 1697029 (D.D.C. June 12, 2007); Murchison v. Inter-City, order (June 12, 2007).  That opinion explained that for legal and equitable reasons, both John's estate and George would be required to make good to the Plan the respective losses resulting from the fiduciary breaches by John and George.  Murchison v. Inter-City, 2007 WL 1697029 at *2.  It also provided detail about the funds collected, the set-offs against the different funds collected, and the proportion of the available funds to be distributed to each individual who filed a claim and was entitled to a share.  Id. at *4.  It explained that "[s]ince George is currently liable to the Plan, he will be excluded from the distribution of the current [Plan] funds available."  Id. at *5.  Excluding George from the distribution had the effect of increasing all other claimants' distribution proportionately.  Id.

The decision also denied Betty's motion for post-trial litigation attorney's fees and costs, expressly addressing the factors identified in Moore v. CapitalCare, Inc., 461 F.3d 1, 13-14 (D.C. Cir. 2006).  See Murchison v. Inter-City, 2007 WL 1697029 at *3-4.  In the course of that discussion, the opinion described aspects of the parties' conduct during the post-trial litigation.  Among other things, the opinion stated that

> The parties in this case have seemed far more intent
> upon engaging in unproductive sniping and burden-

-4-

> shifting than achieving optimal asset recovery for all those admittedly entitled to share in it. . . .
>
> The parties' diligence deficit did not end there. . . . This Court repeatedly ordered the parties to both identify appropriate receiver candidates and to develop agreed-upon compensation plans for receivers. The parties repeatedly failed to comply. . . . In response, counsel have repeatedly offered themselves as candidates for receiver, shifted to the Court their burden of locating appropriate candidates, and insisted that none of the parties is willing to compensate a receiver. . . .
>
> The limited receiver diligently fashioned and proposed a settlement package the parties chose to reject. Instead they have now won at best a Pyrrhic victory. . . . No one would dispute that recoveries of the magnitude here are likely illusory.

Id. (internal quotations and citations omitted).

### DISCUSSION

I.  DISQUALIFICATION

Any United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or where "he has a personal bias or prejudice concerning a party[.]"  28 U.S.C. § 455(a) and (b)(1).  The law on disqualification for bias or its appearance is well-settled. As the Supreme Court has explained:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are [not] proper grounds . . . for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course

> of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They **may** do so if they reveal an opinion that derives form an extrajudicial source; and they **will** do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in <u>Berger v. United States</u>, 255 U.S. 22 . . . (1921), a World War I espionage case against German-American defendants: 'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.' <u>Id.</u> at 28 (internal quotation marks omitted). **Not** establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.

<u>Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994) (citation omitted). "'Nothing in [§ 455(a)] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial.'" <u>United States v. Haldeman</u>, 559 F.2d 31, 139 n.360 (D.C. Cir. 1976) (quoting S. Rep. No. 93-419, 93d Cong., 2d Sess. 5 (1973); H.R. Rep. No. 93-1453, 93d Cong. 2d Sess. 5 (1974)). A § 455(a) motion must be "evaluated on an **objective** basis, so that what matters is not the reality of bias or prejudice, but its appearance. Quite simply and quite universally, recusal [is] required whenever 'impartiality might reasonably be questioned.'" <u>Liteky</u>, 510 U.S. at 538 (citation omitted). "[R]ecusal [is] not required under section 455(a)

-6-

where statements [are] not sufficient to raise the appearance of prejudice in the mind of a reasonable person who is familiar with all the facts[.]" United States v. Barry, 961 F.2d 260, 263 (D.C. Cir. 1992) (internal quotation and citation omitted). "[T]o be disqualifying [under 28 U.S.C. § 455(a)], the appearance of bias or prejudice must stem from an extrajudicial source." Id.

A motion to disqualify should not be granted lightly or where it lacks factual support. See United States v. Pollard, 959 F.2d 1011, 1023 (D.C. Cir. 1992) (stating that "disqualification of a judge is not lightly granted").  "There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961).  While one of the purposes of enacting § 455 was to remove a judge's duty to sit where his impartiality might be reasonably questioned,

> "the new test [of objectivity in § 455] should not be used by judges to avoid sitting on difficult or controversial cases. . . .  [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.  Disqualification for lack of impartiality must have a reasonable basis."

-7-

Haldeman, 559 F.2d at 139 n.360 (quoting S. Rep. No. 93-419, 93d Cong., 2d Sess. 5 (1973); H.R. Rep. No. 93-1453, 93d Cong. 2d Sess. 5 (1974)).

Here, Betty argues that certain statements in the opinion in Murchison v. Inter-City, 2007 WL 1697029, as well as certain provisions in the final judgment accompanying the opinion, serve as a basis for reasonably questioning my impartiality. Specifically, she cites excerpts from the opinion's statements quoted above that were made in weighing factors relevant to determining whether an additional award of attorneys fees was warranted. Id. at *3-4. (See Mot. at 2, 6-8.) She argues that they also demonstrate prejudice against her and bias in favor of George.

Betty has not shown that an observer reasonably well acquainted with all the facts would question my impartiality or that a personal bias or prejudice exists. Betty does not show that any bias she perceives either stems from an extrajudicial source or "display[s] deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 510 U.S. at 556. Every remark to which she objects refers to "the parties," not to her exclusively.[2] Every remark explicitly referred to the

---

[2] She misstates criticism of her lawyer's nonfeasance as being statements of prejudice against her (see Mot. at 8), and wholly ignores the record evidence substantiating that criticism. See Murchison, 2007 WL 1697029 at *3-4.

parties' conduct during the course of the proceedings.  No remark is of the sort that the Supreme Court has identified as evidence of deep-seated and unequivocal antagonism.  Her claim of bias in favor of George cannot be squared with my uncompelled choice to exclude George from receiving any distribution of Plan funds as a matter of fairness.  In sum, Betty has not supported her motion to disqualify under either § 455(a) or § 455(b)(1) with evidence warranting recusal, and the motion will be denied.[3]

---

[3] Betty also argues that I "breached" a "duty" to ensure that settlement discussions remain confidential in violation of Federal Rule of Evidence 408 (Mot. at 9) by stating that "'[t]he limited receiver diligently fashioned and proposed a settlement package the parties chose to reject.'"  (Mot. at 2 (quoting Murchison v. Inter-City, 2007 WL 1697029 at *4) (alteration added).)  Her argument is not supported by law.  Rule 408 has no applicability in this context, as it prohibits admission into evidence on behalf of any party of a settlement offer or statements made during settlement negotiations for the purpose of proving claim liability or claim invalidity.  Fed. R. Evid. 408(a).  The settlement efforts were not mentioned for the purpose of proving liability or claim invalidity, and they were not mentioned on behalf of any party.  Neither any settlement terms nor any party's position was revealed by my statement, and it in no way prejudiced any interest that Rule 408 is designed to protect.  Indeed, Rule 408 does **not** prohibit evidence of such facts or statements for other purposes. Fed. R. Evid. 408(b).
   Betty's effort to turn a supposed violation of Rule 408 into evidence of bias is equally flawed.  The settlement efforts were mentioned in the discussion of the factors established in Moore, 461 F.3d at 13-14, that guide a court's discretion in granting or denying an award of attorneys fees under the ERISA statute.  Murchison v. Inter-City, 2007 WL 1697029 at *3-4.

## II. ALTERING OR AMENDING THE JUDGMENT

A motion to alter or amend under Federal Rule of Civil Procedure 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Ciralsky v. C.I.A.</u>, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted)).

    1.   <u>Judgment against the estate</u>

Betty argues that the judgment against her as personal representative of John's estate for $786,365.16 should be vacated because it violates due process. She asserts that no claim related to the Plan has ever been asserted against John's estate in this case in the nine years since she filed the action, and that she was denied any opportunity to present factual and legal defenses. She also claims that the amount of the judgment is clearly erroneous. The record contradicts Betty's arguments.

Betty filed this action on February 19, 1998 in her individual capacity and as personal representative of John's estate. George filed an answer to her complaint one month later, alleging that any improper use of the Plan's funds occurred at John's direction. (Answer of George B. Murchison and Jewel S. Murchison at 2.) Less than two weeks later, George also filed a

-10-

counterclaim against Betty personally and as representative of John's estate, demanding judgment against Betty for damages and losses if an accounting showed that John breached a duty to the Plan to George's detriment.  (Third Party Compl. & Countercl. at 4.)  Betty knew of the counterclaim against her as personal representative of the estate because she answered it the following month, denying liability.  (Answer of Counter-def. Betty B. Murchison to Countercl. at 2, ¶ 12.)  Moreover, the amount of loss to the Plan that was attributed to John was based on evidence aired at the merits trial in which Betty and her counsel participated.  <u>See</u> <u>Murchison v. Inter-City</u>, slip. op. at 6-7 (Aug. 10, 2001) (Findings of Fact ¶¶ 11-13).  In sum, Betty had notice and ample opportunity to be heard on this issue in the trial court and to challenge or correct the record in the course of the proceedings.

Her appeal of the original judgment in this case -- taken in both her individual and representative capacities -- also did not challenge this finding of fact concerning the amount of loss attributable to John.  It is only now that she contends it is clearly erroneous.  Her effort to object to that finding of fact and seek its correction though, is fatally belated.  Her present-day calculation is inconsistent with the evidence presented at trial and does not demonstrate that the amount first announced on August 10, 2001 is clearly erroneous.

-11-

In addition to not supporting her claim with facts, Betty's request ignores both the law and the equities of the case. Betty's complaint prayed "for such damages and losses as will be proved at the trial of this case . . . and such other and further relief as this Court deems just." (Compl. at 5.) Now Betty's motion asks that I turn a blind eye to John's prohibited transactions while George's prohibited transactions form the basis of a judgment. Although George did not pursue his counterclaim to conclusion, the court of appeals has made clear that ERISA "plainly requires fiduciaries who breach their obligations to 'make good to [an ERISA] plan any losses to the plan resulting from each such breach.'"[4] <u>Murchison v. Murchison</u>, slip op. at 2 (quoting 29 U.S.C. § 1109(a)). It would be incongruous and inequitable to grant Betty relief that would dishonor ERISA's command.

Betty also contends that the judgment violates D.C. Code § 20-903(a)(1), which provides that "'[a]ll claims against a decedent's estate . . . shall be barred against the estate, the personal representative, and the heirs and legatees, unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative.'" (Mot. at 13.) Betty implies that she was appointed personal

---

[4] Betty's suggestion that it was retaliation to follow the law in requiring John's estate to make good to the Plan the losses John caused is mistaken.

representative some time in 1995, making the judgment time-barred.  Whether that is true is an issue that may arise in the course of any collection efforts, but of greater concern is Betty's effort now to use the estate as both a sword and a shield.  She brought this action asserting claims in part on behalf of the estate, knowingly exposing it to counterclaims and knowingly asserting no statute of limitations defense to George's counterclaim.  She effectively suggests now, though, either that the estate was free to sue here but be immune from countersuit, or that her unexplained failure ever to assert a statute of limitations defense should not be deemed to have waived it.  Rejecting both propositions poses no unfair prejudice to Betty.

2.  Prejudgment interest

Betty argues that the final judgment against George does not comply with the mandate issued by the court of appeals because it does not require that George pay prejudgment interest.  Betty's position is not supported by law.  While this circuit has determined that prejudgment interest on Plan distributions is "presumptively appropriate," it has not required prejudgment interest in every case.  Moore, 461 F.3d at 12.  Whether to require interest and, if so, the rate of interest to apply is a matter of discretion to be determined in light of the equities.  Id. at 13; Smith v. Am. Int'l Life Assurance Co., 50 F.3d 956, 958 (11th Cir. 1995) (stating that the rate of prejudgment

interest is discretionary); accord Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616-618 (6th Cir. 1998) (concluding that a 12% prejudgment interest rate is excessive and could effectively be punitive damages, which is contrary to the ERISA scheme and would be an abuse of discretion).  As is reflected in the discussion of the Moore factors in Murchison v. Inter-City, 2007 WL 1697029 at *3-4, the equities in this case do not warrant imposing prejudgment interest on the amount for which George is liable to the Plan under 29 U.S.C. § 1109(a).  Betty has not established that not requiring George to pay prejudgment interest constitutes either clear error or manifest injustice.

    3.   Attorneys fees

Relying on 29 U.S.C. § 1132(g)(1) and law of the case doctrine, Betty contends that because she was awarded attorneys fees through September 17, 2001, that she is entitled to subsequently incurred attorney's fees and costs, as well. Betty's reliance is misplaced.

Although 29 U.S.C. § 1132(g)(1) permits attorneys fees to be awarded, it does not mandate them.  Rather, the matter is left to the discretion of the trial court.  Id. ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party."); see also Eddy v. Colonial Life Ins. Co. of America, 59 F.3d 201, 203 (D.C. Cir. 1995) ("The district

-14-

court's decision whether to grant attorneys' fees is reviewed only for abuse of discretion.").

"'Law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995). "Law of the case is a prudential rule rather than a jurisdictional one; in the words of Justice Holmes, the doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" Id. at 739-40 (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)). The law of the case doctrine does not apply here because whether to award attorney's fees for post-trial litigation was not previously decided. While an order dated August 10, 2001 ("August 10 Order") did hold George and Inter-City liable to Betty and Lee for reasonable attorney's fees and costs, it did not contemplate, and did not make, any prospective award for attorney's fees and costs incurred in post-trial litigation. Murchison v. Inter-City, order (Aug. 10. 2001). In short, the August 10 Order did not establish any law of the case regarding attorney's fees and costs incurred in post-trial appeals or other post-trial matters, and additional fees and costs were denied for the reasons stated in Murchison v. Inter-

City, 2007 WL 1697029 at *3-4. Betty has established no basis for amending that result.

   4.   Other faults

   Betty also requests that the final judgment be revised to include court-imposed deadlines for two accountings that were ordered, and to specify the current marital status of George and defendant Jewel Murchison, a fact which is not part of the record. Betty has not demonstrated that manifest injustice will result in the absence of the amendments she seeks. As she has not met the requirements to entitle her to relief under Rule 59(e), her requests will be denied.

                        CONCLUSION AND ORDER

   Because Betty has not shown that the bias she infers either displays a deep-seated and unequivocal antagonism that would render fair judgment impossible or stems from extrajudicial sources, her motion to disqualify will be denied. Because Betty has not identified any intervening change in controlling law, any new evidence, or any need to correct clear error or prevent manifest injustice, her motion to alter or amend the judgment will be denied. Accordingly, it is hereby

   ORDERED that the plaintiff's motion [235] to disqualify and to alter or amend the final judgment be, and hereby is, DENIED.

`Case 1:98-cv-00436-RWR   Document 236   Filed 08/03/07   Page 16 of 16`

-16-

SIGNED this 3rd day of August, 2007.

```
                              /s/
                    RICHARD W. ROBERTS
                    United States District Judge
```